## 34249. HARDY v. THE STATE.

UNDERCOFLER, Presiding Justice.

Appellant was convicted of felony-murder and sentenced to life imprisonment. He appeals. We affirm.

1. The evidence was sufficient to support the verdict. The state submitted evidence from which the jury could reasonably conclude that the appellant critically wounded Douglas Rozier, a fellow student and fraternity initiate, by stabbing him repeatedly with a hunting knife, then sought to conceal the crime by disposing of the knife and persuading another student, Dwight Cornelius, to corroborate his story that the two of them found Rozier bleeding in the parking lot and did not know what had

happened to him. Through the testimony of Ellwood Wynn, the state showed Hardy, Rozier and Cornelius began drinking at an apartment Wynn shared with Rozier, the victim, at 9 a.m. on March 4, 1978, and they continued to do so until nearly 8:30 p.m. The three students left the apartment. Wynn went to a party and left it to go to Carter's store. While crossing a field, he was accosted by the three students who jostled him, knocked him around and dislodged a lens out of his glasses. He protested and Rozier and Cornelius left, but Hardy persisted, brandishing an open knife while executing karate stances and seeking to entice Wynn into a fight. Wynn was unarmed. Rozier returned and Hardy left. Rozier told Wynn he should apologize to Hardy. Cornelius then testified Rozier rejoined them, and they drove to a nearby parking lot near their fraternity room. They rehearsed their lines for an initiation and got out of the car. Rozier and Hardy commenced to run, Rozier in front and Hardy following brandishing the open knife at him. Hardy pushed Rozier up against a wire fence and "poked" at him with the knife repeatedly. Hardy stepped back, left the parking lot and went into the fraternity room in Ohio Hall. Cornelius stated he did not know if the men were arguing or not. He examined Rozier after Hardy left, saw blood on his hand, then he also left to join Hardy. They went back and found Rozier's sides covered with blood. Hardy then ran for help, returning with two security guards. He and Cornelius told the guards they did not know what had happened and that they had found Rozier in the parking lot. Later, Wynn was questioned by police and officers then confronted Cornelius regarding the inconsistency in his statement. He then changed his story and told the facts of what had transpired. Hardy was arrested on a charge of aggravated assault. A search failed to reveal the knife. Expert testimony established Rozier died on March 23, 1978, death resulting from the inability of the heart to supply blood to the brain. An autopsy showed Rozier had received a puncture wound in the lower right abdomen and a thrust, delivered with some force, that penetrated his chest, a rib, his left lung and entered the left ventricle of his heart. Appellant was indicted for murder. The court charged on malice murder,

felony murder, aggravated assault with a deadly weapon and involuntary manslaughter. There is no merit to enumerations of error 4, 16 and 17 challenging the sufficiency of the evidence to support the verdict.

2. Appellant's enumerations of error 1 and 2 attack the holding of this court in *Baker v. State,* 236 Ga. 754 (225 SE2d 269) (1976), in which we refused to adopt the merger doctrine and held that an underlying felony of aggravated assault could support a felony-murder conviction. Appellant argues the trial court erred in charging on felony-murder and suggests this court should overrule, modify or distinguish *Baker,* supra, and reverse the conviction here. We decline to do so and reject appellant's argument that the conviction was improper or that a charge on felony murder was error. These enumerations are without merit.

3. Appellant contends in enumeration of error 15 that the trial court erred in denying his motions for mistrial and in failing to grant his motion for new trial where a juror, dispersed under instruction, and a state's witness, Ellwood Wynn, with Wynn's landlord and the landlord's son-in-law, rode together to a local restaurant, ate lunch and returned to the court. Prior to the jury beginning its deliberations, defense counsel notified the court he had witnessed the group at lunch "laughing and talking." The court conducted an investigation into the misconduct of the juror, and the four men testified under oath, subject to cross examination, that they were aware of the court's instruction to the jury and they did not discuss the case at any time. Such testimonial evidence is an acceptable means of proof to meet the burden cast upon the state, in such circumstances, to rebut by proof a presumption of harm. *Suple v. State,* 133 Ga. 601 (66 SE 919) (1909); *Battle v. State,* 234 Ga. 637 (217 SE2d 255) (1975). Appellant shows no injury requiring a new trial, and we conclude the trial court was correct in finding the state met its burden of proof and that no prejudice to the defendant was shown by the juror's misconduct. *Morakes v. State,* 201 Ga. 425, 434 (40 SE2d 120) (1946); *Roberts v. State,* 14 Ga. 8 (1853). Compare *Martin v. State,* 242 Ga. 699 (1978). The cases cited by appellant are distinguishable on their facts or are supportive of our

holding here.

4. The remaining enumerations of error challenge the charge of the court.

(a) There was no error in charging that malice may be presumed and may arise from a reckless disregard for human life. *Myrick v. State,* 199 Ga. 244 (34 SE2d 36) (1945). Nor was it error to charge that the law presumes the intent to kill when a person uses a deadly weapon or instrumentality in the manner in which such weapon or instrumentality is ordinarily employed to produce death. Code Ann. § 26-1302 (b). These charges were properly given under the court's instruction regarding malice murder and were not erroneous or prejudicial to appellant. Enumeration 5 is without merit.

(b) In Enumeration 6, appellant contends the charge on presumption of intent to kill which arises from the use of a deadly weapon is error, because, if not burden-shifting, its use under the facts of this case deprived him of due process. We have held conversely to this contention in *Patterson v. State,* 239 Ga. 409 (238 SE2d 2) (1977); *Thomas v. State,* 240 Ga. 454 (241 SE2d 204) (1978); and *Davis v. State,* 237 Ga. 279 (227 SE2d 249) (1976). Further, there is no evidence of mitigation, justification or alleviation which would make such a charge erroneous nor did it penalize appellant for failing to testify. *Aguilar v. State,* 240 Ga. 830 (242 SE2d 620) (1978).

(c) In Enumeration 7, appellant argues there was no evidence the homicide here was intentional and the trial court erred by instructing the jury that ". . . the law presumes every intentional homicide to be malicious until the contrary is established." This charge, part of the instruction on malice murder, was based upon the evidence from the medical examiner showing considerable force was used to create the wound which killed the victim and the testimony by Cornelius concerning the events of the evening from which the jury could reasonably infer the necessary intent. See *Patterson v. State,* supra, at page 413.

(d) In Enumeration 8, appellant contends the charge that a "person of sound mind and discretion is presumed to intend the natural and possible consequences of his

act, but this presumption may be rebutted" was burden-shifting and the charge ignores the fact that defendant was intoxicated at the time of the incident and he could not have been of sound mind and discretion, negating the specific intention required to sustain a conviction of a particular crime. The charge is not burden-shifting. *Patterson v. State,* supra, at pp. 417, 418. And, if the intention to commit the act in controversy is present, intoxication is no excuse for the crime. *Meadows v. State,* 230 Ga. 471, 472 (197 SE2d 698) (1973). The court's charge is a correct statement of the law, and under the circumstances of this case, appropriate.

(e) It was not error to give a requested charge on malice in substance rather than verbatim as requested, *Herrmann v. State,* 235 Ga. 400, 402 (220 SE2d 2) (1976), nor was it error to explain to the jury that involuntary manslaughter is a "lower grade of homicide." Such statement considering the entire charge, did not prejudice appellant. Enumerations 10 and 11 are without merit.

(f) It was not error for the court to charge that in the event the jury could not agree on a verdict, the court is "required by law to declare a mistrial and try the case before another jury." Such charge does not overly stress the necessity for unanimity, was not coercive and such reference does not amount to an excessive "Allen" charge. Allen v. United States, 164 U. S. 492 (17 SC 154) (1896); *Yancey v. State,* 173 Ga. 685 (5c) (160 SE 867) (1931); *Hyde v. State,* 196 Ga. 475 (26 SE2d 744) (1943). Enumeration of error 14 is without merit.

(g) The trial court properly charged aggravated assault under the facts of this case and fully charged on "intention" to commit a criminal act. The crimes with which appellant was charged were properly defined and there was no error in failing to specifically define the word "homicide." The appellant cannot complain that the trial court erred in limiting its charge on involuntary manslaughter in the commission of an unlawful act to "reckless conduct." Such limitation benefited rather than harmed appellant. We find no reversible error in the trial court's charge on "criminal negligence." There is no merit in enumerations of error 3, 9, 12 and 13.

*Judgment affirmed. All the Justices concur.*

ARGUED NOVEMBER 20, 1978 — DECIDED DECEMBER 5, 1978.

*Hubert E. Hamilton, III,* for appellant.
*W. Donald Thompson, District Attorney, J. W. Trunnell, Jr., Assistant District Attorney, Arthur K. Bolton, Attorney General, W. Davis Hewitt, Staff Assistant Attorney General,* for appellee.